# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE-OPELOUSAS DIVISION

Michell B. Deville, et al                                Civil Action No. 06-1451

versus                                                       Judge Tucker L. Melançon

Louis Dale Marcantel, et al                     Magistrate Judge C. Michael Hill


## MEMORANDUM RULING

Before the Court are the following motions: 1) Motion for Summary Judgment filed by defendant Officer Dewayne Tarver, individually and in his official capacity as a Police Officer for the Village of Turkey Creek [Rec. Doc. 46]; 2) Motion for Summary Judgment filed by defendant Chief Louis Dale Marcantel, individually and in his official capacity as Chief of Police for the Village of Turkey Creek [Rec. Doc. 42]; 3) Motion for Summary Judgment filed by the Village of Turkey Creek [Rec. Doc. 44]; and, 4) Motion for Judgment on the Pleadings filed by the Village of Turkey Creek [Rec. Doc. 40]. For the following reasons, the motions for summary judgment will be granted with prejudice as to plaintiffs' federal claims and without prejudice as to plaintiffs' state law claims. The Village of Turkey Creek's motion for judgment on the pleadings will be denied.

*I. Background*

1

This matter arises out of an August 5, 2005 traffic stop of plaintiff, Michell Deville (sometimes referred to as "plaintiff"), in the Village of Turkey Creek in Evangeline Parish, Louisiana. According to plaintiff's deposition testimony, she was driving with her two and one-half year old granddaughter in a restrained car-seat in the backseat when she noticed the lights of a police car behind her. Plaintiff steered her vehicle to the right shoulder of the road and came to a stop with her engine running. At approximately 6:04 p.m., Dewayne Tarver, a Village of Turkey Creek police officer ("Officer Tarver"), walked up to plaintiff's driver's side window, informed her that she had been driving 50 m.p.h. in a 40 m.p.h zone and asked for her driver's license. Plaintiff told Officer Tarver that "it wasn't possible; [she] had [her] cruise control on 40." Officer Tarver responded, "Well, I clocked you at 50," to which plaintiff stated "it was bullshit."

After being told a second time that she was driving 50, plaintiff handed her license to Officer Tarver. Officer Tarver then requested plaintiff's vehicle registration. As she was leaning towards her glove box, "[plaintiff] told him it was bullshit again." Office Tarver then "told [her] [she] needed to step out [of her] car" and that "[He's] going to bring [her] in" because "[she's] under arrest." After being told to step out of the car, plaintiff responded, "I haven't done anything wrong," to which Officer Tarver again told her to step out of her vehicle. Plaintiff then rolled

2

up her window and locked the doors.  Officer Tarver walked back to his vehicle to call his superior, Turkey Creek Chief of Police Louis Dale Marcantel ("Chief Marcantel").  During that time plaintiff made several phone calls to family members, including her husband and son who told her they were coming to the scene.

Thereafter, Chief Marcantel, arrived at the scene and walked to Deville's vehicle.  Chief Marcantel was not in his uniform but "showed [plaintiff] his badge", and then he told [her] [she] needed to get the window down or he was going to break it."  Plaintiff told Chief Marcantel that she was waiting for her husband to get to the scene to see about her granddaughter.  Chief Marcantel subsequently broke plaintiff's driver side front window with Officer Tarver's flashlight.  He then grabbed plaintiff's wrists through the window while Officer Tarver opened the driver's side door and Officer Tarver and Chief Marcantel extricated her from the vehicle.  Plaintiff was placed against her vehicle and handcuffed by Officer Tarver.  During the extrication and handcuffing, plaintiff attempted to use her cell phone.  As plaintiff was being escorted to Officer Tarver's police car, she "fell" to the ground.   Both Chief Marcantel and Officer Tarver picked plaintiff up from the ground and placed her in Officer Tarver's vehicle.

While driving to the sheriff's department, Officer Tarver summoned Acadian Ambulance to the station to assist plaintiff.  Plaintiff refused medical treatment,

3

telling emergency technicians that she was "okay." Plaintiff later requested medical treatment and Acadian Ambulance returned. Chief Marcantel requested blood and urine samples be taken from plaintiff and sent to the Louisiana State Police laboratory. The laboratory results were returned on April 19, 2006 and showed the presence of Phentermine and Sertraline, an anti-anxiety drug and a prescription appetite suppressant.

On June 19, 2006, plaintiff was arrested at her home by Evangeline Parish Sheriff's deputies for operating a vehicle under the influence of a Schedule IV controlled dangerous substance, Phentermine and Sertraline, and for the illegal use of a controlled dangerous substance in the presence of persons under the age of seventeen. *Evangeline Parish Warrant of Arrest no. 18125.* Subsequently, all charges against Michell Deville were Nolle Prosed by the Evangeline Parish District Attorney.

Plaintiff and her husband, Ricky James Deville,("plaintiffs") filed suit in the Thirteenth Judicial District Court for Vermillion Parish, Louisiana, on August 3, 2006 against defendants seeking damages for personal injuries and for denial of Michell Deville's civil rights. *Complaint.* On August 24, 2006, the suit was removed to this Court. [Rec. Docs. 2, 7].

*II. Summary Judgment Standard*

4

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994)(en banc). When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Celotex Corp.*, 477 U.S. at 324.

Once the movant produces such evidence, the burden shifts to the respondent to direct the attention of the court to evidence in the record sufficient to establish that there is a genuine issue of material fact requiring a trial. *Id.* The responding party may not rest on mere allegations made in the pleadings as a means of establishing a genuine issue worthy of trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Little*, 37 F.3d at 1075. If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 322. Before it can find that there are no genuine issues of material fact, however, the court must be satisfied

5

that no reasonable trier of fact could have found for the non-moving party.  *Id.*

### III.  Analysis

Plaintiffs allege that defendants violated The Civil Rights Act of 1871, 42 U.S.C. §1983 by depriving Michell Deville of her civil rights under the "First, Fourth, Ninth and Fourteenth Amendments to the Constitution of the United States of America."  *Complaint, ¶ 15.*  Plaintiffs specifically assert the right to be free from unreasonable search and seizure and the right to be free from the use of excessive force, false arrest, malicious prosecution and false imprisonment.  Plaintiffs also allege state law claims for battery, false arrest, false imprisonment, use of excessive force, malicious prosecution, vicarious liability and conspiracy.  Plaintiff, Ricky James Deville, brings a claim for loss of consortium.  As all claims against the defendants arise out of the same operative facts, the Court will first address the motions for summary judgment filed by Officer Tarver, Police Chief Marcantel and the Village of Turkey Creek as to the federal claims and then address the state law claims and the motion for judgment on the pleadings filed by the Village of Turkey Creek.

### A.  Plaintiff's Claims Under 42 U.S.C. §1983 Against Officer Dewayne Tarver and Police Chief Louis Dale Marcantel

The Civil Rights Act of 1871, 42 U.S.C. §1983 provides that any person who,

6

under color of state law, deprives another of "any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured...." Section 1983 does not create any substantive rights, but rather, it provides a remedy for the rights that it designates. *See* 42 U.S.C. § 1983 (2006); *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1573 (5th Cir. 1989). "Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983." *Id.*

Plaintiffs claim that defendants violated Michell B. Deville's § 1983 civil rights to be free from unlawful seizure and arrest, excessive force, malicious prosecution and false arrest under the Fourth Amendment and the Fourteenth Amendment. There are three elements to establish liability through a Section 1983 action. *Bush v. Viterna*, 795 F.2d 1203, 1209 (5th Cir.1986). There must be (1) a deprivation of a right secured by federal law (2) that occurred under color of state law, and (3) was caused by a state actor. *Id.* "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Baker v. McCollan*, 443 U.S. 137, 146, (1979); *see also Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450 (5th Cir.1994) (en banc).    Claims brought under 42 U.S.C. §1983 are analyzed according to whether the defendant is an individual or a government entity. *Monell v. Dep't of Social Services*, 436 U.S. 658, 691-92 (1978). A §1983 claim filed against an individual must be based upon

that person's actual involvement in the events giving rise to the deprivation. *Id.* Entering a judgment against both a corporation and its employee in its official capacity is improper because such a judgment would "effectively make the corporation liable for the same act." *Sims v. Jefferson Downs Racing Assoc.*, 778 F.2d 1068, 1081 (5th Cir. 1985)

*1. Official Capacity Claims Against Officer Tarver and Chief Marcantel*

Plaintiffs allege that Officer Tarver and Chief Marcantel are liable in their official capacities. A suit against a municipal official in his official capacity is tantamount to a suit against the municipality. *Hafer v. Melo*, 502 U.S. 21 (1991). The municipality may be held liable on account of the unconstitutional conduct by the official only if the entity's policy or custom played a part in the violation of the plaintiff's rights. *Id.*

Defendants maintain that the Village of Turkey Creek is a "Lawrason Act" municipality which is governed by a "mayor-board of alderman" form of government pursuant to La. R. S. 33:321. *Aff. Of Janet, Mayor of Village of Turkey Creek.* Because the police department is dependent upon the municipality, the Village of Turkey Creek is the appropriate "Official Capacity Defendant." *R. 42, 44, 46.*

Plaintiffs do not address the official capacity claims in their opposition, nor do they address defendants' argument as to Officer Tarver and Chief Marcantel. Rather, plaintiffs concede that Turkey Creek is the appropriate entity to be sued as the official

capacity defendant and contend in their opposition that the Village of Turkey Creek "apparently required no training of its officers and took no action to curb their behavior." *R. 53.*

Plaintiffs claims against Officer Tarver and Chief Marcantel in their official capacities will therefore be dismissed and the plaintiffs' claims against Officer Tarver and Chief Marcantel, in their individual capacities, and the Village of Turkey Creek will be addressed in turn.

*2. Individual Capacity Claims Against Officer Tarver and Chief Marcantel*

State actors are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An important factor in affording public officials the protections of qualified immunity is the policy of not deterring officials from fully discharging their professional duties. *Pierson v. Ray*, 386 U.S. 547, 555 (1967). "One of the purposes of immunity, absolute or qualified, is to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit." *Siegert v. Gilley*, 500 U.S. 226, 232 (1991). "Balanced against these concerns is the right of injured persons to receive redress for a violation of their constitutional rights, with the threat of monetary damages operating to deter public officials from violating citizens' constitutional rights." *Sanchez v. Swyden*, 139 F.3d

464, 468 (5ᵗʰ Cir. 1998)(citations omitted).

Both Officer Tarver and Police Chief Marcantel raise the defense of qualified immunity.  The question of qualified immunity involves a two step inquiry.  First, a court must determine whether plaintiff has alleged a violation of a clearly established right.  *See Siegert v. Gilley*, 500 U.S. 226, 231-33 (1991).  Second, the court must determine whether the officer's conduct was objectively reasonable in light of the legal rules applicable at the time of the alleged violation.  *Id.*  The inquiry is conducted without regard for the law enforcement officer's actual state of mind or subjective motivations.  Instead, the court attempts to put itself "in the shoes of a reasonable police officer as he or she approaches a given situation and assesses the likelihood of danger in a particular context."  *Fontenot v. Cormier*, 56 F.3d 669, 673 (5ᵗʰ Cir. 1995) *citing United States v. Rideau*, 969 F.2d 1572, 1574 (5th Cir.1992) (en banc).  An officers' actions are objectively unreasonable where no reasonably competent officer would find probable cause to arrest the plaintiff.  *Mendenhall v. Riser*, 213 F.3d 226, 230 (5ᵗʰ Cir. 2000).  "On the other hand, 'if officers of reasonable competence could disagree on this issue, immunity should be recognized.'"  *Id.* (citations omitted).

*a. Individual Claims Against Officer Tarver*

*i. Unlawful Arrest*

Plaintiffs allege that Officer Tarver's arrest of Michell Deville amounted to an

unlawful seizure and that he used excessive force in effecting his arrest. The Fourth Amendment bestows the constitutional right upon a person to be free from unreasonable seizures of both his person and effects. "In order to make a warrantless arrest in a public place, the arresting officer must have probable cause to believe that the suspect has committed, is committing, or is about to commit a crime." *Fontenot v. Cormier*, 56 F.3d 669, 674 (5th Cir. 1995) (citing *Harper v. Harris County*, 21 F.3d 597, 601 (5th Cir.1994)). "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater*, 195 F.3d 242.

In *Atwater*, a motorist arrested for her failure as well as that of her children to wear seat belts, brought civil rights claims against the arresting officer. The arresting officer asserted the defense of qualified immunity. The Fifth Circuit held that the officer was not entitled to the defense because the seizure was objectively unreasonable. *Id.* at 388-89. The Fifth Circuit later granted rehearing *en banc*. On rehearing, the court upheld summary judgment in the officer's favor, concluding that the arrest was reasonable under the Fourth Amendment because the officer had probable cause to arrest the motorist for the seat belt violations. The United States Supreme Court affirmed the Fifth Circuit's *en banc* ruling. *See Atwater v. City of Lago Vista*, 195 F.3d at 245-46 (5 th Cir.1999) (en banc), *affirmed by Atwater*, 532

11

U.S. 318, 354 (U.S. 2001) (An officer may arrest an individual without violating the

Fourth Amendment if there is probable cause to believe that the offender has

committed even a very minor criminal offense in the officer's presence.) .

In the case *sub judice*, Louisiana Revised Statute 32:391 provides that officers

are authorized to perform a full custodial arrest when a traffic violator refuses to sign

the ticket and summons.[1]  Louisiana Revised Statute 14:108 provides,

> "Resisting an officer is the intentional interference with, opposition or
> resistance to, or obstruction of an individual acting in his official
> capacity and authorized by law to make a lawful arrest, lawful detention,
> or seizure of property or to serve any lawful process or court order when
> the offender knows or has reason to know that the person arresting,
> detaining, seizing property, or serving process is acting in his official
> capacity."

The undisputed evidence shows that Officer Tarver initially stopped plaintiff

on suspicion of driving 50 m.p.h. in a 40 m.p.h. zone.  Plaintiff confirms that she

responded to Tarver's requests for her driver's license and registration with the

remark that "it was bullshit" and that she refused to exit her vehicle when Tarver

requested that she do so. *M. Deville, pp.47-48.* Upon telling plaintiff he would have

to "bring her in" if she didn't cooperate, plaintiff rolled up her window, left her

---

[1] La. R.S.32:931(B) provides in pertinent part:
> If the person arrested holds a Louisiana operator's license and
> gives his written promise to appear at the time and place stated, the
> officer may release him from custody.... Any such person refusing
> to give the written promise to appear shall be taken immediately by
> the arresting officer before the nearest or most accessible
> magistrate having jurisdiction.

12

locked car running and called her husband and son to come to the scene. *Id., pp49-52.* The record provides that when plaintiff continually refused to exit her vehicle, Officer Tarver went to his police vehicle to write her a ticket. Plaintiff refused to sign the ticket and told Officer Tarver her husband and son were on their way. *Tarver, p.42.* Tarver stated he was aware that plaintiff was "irate and out of control" and had a young child in the back seat and did not attempt to force plaintiff out of her car.[2] *Id.* Instead he called his superior, Chief Marcantel, through the police dispatcher to assist him at the scene. *Id., pp.42-46.* When Chief Marcantel arrived, plaintiff continued to refuse to exit her vehicle or roll down her window and had to be physically extricated before Officer Tarver placed her under arrest.[3] *Id.* A witness to the incident stated that after plaintiff was physically taken out of her vehicle Officer Tarver and Chief Marcantel escorted her to the police car during which she appeared to continue to resist arrest and then "just dropped - sat down on them." *Chaddrick, pp. 11-19.*

Based on the authority in *Atwater*, Officer Tarver had probable cause to believe that plaintiff committed a crime in his presence. Whether a search or seizure is "extraordinary" turns, above all else, on the manner in which it is executed. *See*

---

[2] Officer Tarver testified that plaintiff told him she "wasn't signing a fucking thing."

[3] The deposition testimony of Officer Tarver and Chief Marcantel indicate that plaintiff said "fuck you" and tried to put her vehicle into gear during her extrication. *Tarver Depo., pp. 51-52; Marcantel Depo., pp. 41-45 .*

*Atwater,* 532 U.S. at 354(citing *Tennessee v. Garner*, 471 U.S. 1(1985); ("seizure by means of deadly force"), *Wilson v. Arkansas*, 514 U.S. 927(1995) ("unannounced entry into a home"); *Welsh v. Wisconsin*, 466 U.S. 740 (1984) ( "entry into a home without a warrant"); and *Winston v. Lee*, 470 U.S. 753(1985) ("physical penetration of the body")). The Court concludes that the foregoing statutes as well as the totality of the facts and circumstances outlined above, including the lack of evidence that Officer Tarver conducted the arrest in an "extraordinary manner," were sufficient for a reasonable person to conclude that Michell Deville had committed or was committing an offense, and therefore, Officer Tarver did not violate her Fourth Amendment rights in making the arrest.

While plaintiffs also contend that Officer Tarver's actions were part of a conspiracy against Michell Deville, they have provided no evidence nor even an argument to support their claim. Plaintiffs have alleged no facts which would indicate Tarver's actions were motivated by some ill will towards Michell Deville. Instead, plaintiff stated in her deposition testimony that she believed Tarver was in good faith when he stopped her. Plaintiffs' also allege in their Complaint that Officer Tarver violated Michell Deville's Fourth Amendment rights when she was arrested on June 19, 2006. In their opposition to the motions for summary judgment, plaintiffs admit that "to this point, discovery has not uncovered any involvement on the part of Dewayne Tarver in the arrest of June 13, 2006 and that the claims against Tarver

14

arising from the June 13, 2006 arrest should be dismissed." *R. 54, p. 9.* Accordingly, plaintiffs' claim of conspiracy against Officer Tarver as well as the claims arising from the June 13, 2006 arrest will be dismissed.

*ii. Excessive Force*

Plaintiffs' excessive force claim centers on whether or not Officer Tarver used excessive force when he assisted Chief Marcantel in extricating Michell Deville from the vehicle, placed her against the vehicle and secured her handcuffs. In *Graham v. Conner,* 490 U.S. 386 (1989), the United States Supreme Court held that where the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment and its reasonableness standard, rather than under a substantive due process approach.[4]  *Id.* at 394-95.  "When examining the propriety of qualified immunity from excessive force claims, the Court is faced with the unusual circumstance that the standard for stating a claim, the objective reasonableness of the force exerted, coincides in large part with the inquiry for determining qualified immunity, the objective reasonableness of the officers' conduct." *Heitschmidt v. City of Houston,* 161 F.3d 834, 839 (5th Cir.1998). Under *Graham,* the relevant factors for

---

[4] "Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right "to be secure in their persons ... against unreasonable ... seizures" of the person." *Graham v. Connor,* 490 U.S. 386, 394 (1989).

determining the objective reasonableness of the officer's conduct include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Martinez-Aguero v. Gonzalez*, 459 F.3d 618, 626 (5th Cir. 2006)(citing *Graham*, 490 U.S. at 396).

Applying the foregoing standards to the case at bar, including the relevant factors of *Graham*, the Court finds that Officer Tarver's actions in restraining and handcuffing Michell Deville were not objectively unreasonable.  The record is undisputed that plaintiff's arrest occurred after her repeated refusal to comply with Officer Tarver's requests as well as her refusal to exit her locked vehicle.  Plaintiff concedes that she continued to refuse to get out of the vehicle when Chief Marcantel arrived at the scene and that after Chief Marcantel broke her window to arrest her, she continued to resist the arrest and tried to use her cell phone while Officer Tarver placed her in handcuffs. *M. Deville, p. 60*. Officer Tarver testified, and plaintiff does not dispute, that he checked to make sure the handcuffs were not too tight and that plaintiff never complained that they were too tight.  *Id., pp. 52-53, 104-05; Tarver p.52*.

Plaintiffs allege that Michell Deville was injured when defendants pulled her out of the vehicle through the door and put her against the vehicle to handcuff her. Plaintiff stated in her deposition that she fell down on the way to the police unit

16

because her abdomen was injured when defendants "threw her" against her car. Contrary to plaintiff's deposition testimony, the testimony of Officer Tarver and of Chief Marcantel provides that they "placed her against the car" without shoving her in order to handcuff her, and that on the way to the police unit plaintiff just "sat down". *Tarver, pp. 51-53; Marcantel, pp. 52-53.* The record supports defendants' testimony. A witness to the incident states that plaintiff appeared to be resisting arrest and that she "just sat down" when defendants were "helping her to ... the deputy car." *Chaddrick, pp. 11,17.* The witness further states that defendants appeared to be "trying to cradle" plaintiff as they were assisting her into the police unit. *Id.* As to her alleged abdominal injury, plaintiff admits that she refused the medical assistance offered by Acadia Ambulance when she arrived at the sheriff's station. The initial medical record confirms plaintiff's refusal of treatment and notes that she "denies pain  no obvious trauma noted in the abdomen/pelvis." *Acadian Amb. Medical Rec. #1.* Upon Acadian Ambulances's return, the medical record provides "Abdomen / Pelvis non distended denied n/v denies pain no obvious trauma." *Acadian Amb. Medical Rec. #2.*

To state a claim for excessive use of force, the plaintiff's asserted injury must be more than *de minimis. Freeman v. Gore,* 483 F.3d 404, 416 (5th Cir. 2007) (internal citations omitted). Assuming *arguendo* that plaintiff's alleged injuries were more that *de minimis,* the Court concludes as a matter of law that Officer Tarver's

actions were objectively reasonable in that he used reasonable force in the arrest of Michell Deville in a situation which could have escalated to a serious situation with an individual who could have posed an immediate threat to the safety of Officer Tarver, herself and her grandchild while she was actively resisting arrest. *Freeman v. Gore,* 483 F.3d 404 (5ᵗʰ Cir. 2007)(Probable cause to arrest an individual who could have "stir[red] up [a] potentially explosive situation")(citing *Huang v. Harris County,* 264 F.3d 1141 (5ᵗʰ Cir. 2001)).   Accordingly, the Court will dismiss plaintiffs' claim of excessive force against Officer Tarver.

*iii. Malicious Prosecution*

In  *Castellano v. Fragozo ,* 352 F.3d 939, 953 -954 (5ᵗʰ Cir. 2003), the Fifth Circuit held that "'malicious prosecution' [or false arrest] standing alone is no violation of the United States Constitution, and that to proceed under § 1983 such a claim must rest upon a denial of rights secured under federal and not state law." *Id.* "The initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection - the Fourth Amendment if the accused is seized and arrested, for example, or other constitutionally secured rights if a case is further pursued.  Such claims of lost constitutional rights are for violation of rights locatable in constitutional text, and some such claims may be made under 42 U.S.C. § 1983. Regardless, they are not claims for malicious prosecution and labeling them as such only invites confusion." *Id.*

Plaintiffs argue that because the criminal charges were *nolle prosequi* by the District Attorney against Michell Deville the Court should sustain their claims of malicious prosecution. Plaintiffs' claim for malicious prosecution, however, must be analyzed under the Fourth Amendment. *Taylor v. Gregg*, 36 F.3d 453, 455-56 (5th Cir.1994) (an action which permits the arrest and prosecution to be deemed a nullity [ie. *nolle prosequi*] do not terminate in favor of the accused).   As the Court has held that Officer Tarver had probable cause to arrest plaintiff and was not objectively unreasonable in his actions, plaintiffs' claim for malicious prosecution must also be dismissed.

## 3. *Individual Claims Against Chief Marcantel*

Plaintiffs allege that Chief Marcantel's arrest of Michell Deville on August 5, 2005 and subsequent arrest on June 19, 2006 amounted to unlawful seizures, that he used excessive force in effecting the first arrest and that he is liable for malicious prosecution and conspiracy in connection with the arrests.   Plaintiffs also allege violations under the First and Ninth Amendments and 42 U.S.C. §§ 1985 and 1986. Chief Marcantel asserts the defense of qualified immunity to the § 1983 claims and maintains that plaintiffs have no right of action under the First and Ninth Amendments nor under §§ 1985 and 1986.

## a. *Unlawful Arrest*s

Based on the Court's analysis as set out above, plaintiff's arrests failed to

19

violate her Fourth Amendment rights and were therefore constitutional.  Assuming *arguendo* that plaintiffs allege that Chief Marcantel's part in the initial arrest was separate from plaintiff's arrest by Officer Tarver, the Court will analyze both arrests under a qualified immunity standard.   Thus, the issue before the Court is whether, when viewed objectively, the facts and circumstances surrounding Michell Deville's arrests support that Chief Marcantel's conduct was objectively reasonable. *Fontenot v. Cormier*, 56 F.3d 669, 673-674 (5th Cir. 1995).

*August 5, 2005 Arrest*

Chief Marcantel's involvement in the August 5, 2005 arrest of Michell Deville began when he arrived at the scene after Officer Tarver called him for assistance. Upon assessing the situation Chief Marcantel broke plaintiff's driver's side window with a flashlight in order to secure the plaintiff.  Thereafter, the two officers removed plaintiff from her vehicle, effectuated her arrest and placed her in the police car.

The Court's analysis in finding that Officer Tarver's conduct in making the arrest was objectively reasonable also applies to Chief Marcantel's conduct.  The Court finds that Chief Marcantel actions were not unreasonable as the totality of facts and circumstances within his knowledge at the moment of arrest were sufficient for a reasonable person to conclude that the plaintiff had committed or was committing one or more offenses. Chief Marcantel had reason to believe that the situation could have escalated to a more serious one in that plaintiff was obviously very upset and

20

seemed to be acting irrationally by refusing to open her locked door or cooperate with the officers, sitting in her vehicle with the engine running and with a small child and calling her husband and son to come to the scene.

The same reasoning as that discussed in plaintiffs' conspiracy theory against Officer Tarver applies to plaintiffs' conspiracy theory against Chief Marcantel. The Court finds that Chief Marcantel had probable cause to believe he had authority to arrest Michell Deville and plaintiffs have failed to assert a claim for conspiracy against him. Thus, plaintiffs' claims against Chief Marcantel for illegal arrest and conspiracy as to the August 5, 2005 arrest will be dismissed.

*June 19, 2006 Arrest*

In contrast to the August 5, 2005 arrest, the June 19, 2006 arrest of plaintiff was pursuant to an arrest warrant. Given this fact, Deville must demonstrate a genuine issue of material fact exists as to whether the defendant knowingly provided false information to secure the arrest warrant or gave false information in reckless disregard of the truth. *Freeman v. County of Bexar*, 210 F.3d 550, 553 (5th Cir. 2000). Plaintiffs must therefore attack the validity of the warrant in order to pierce Chief Marcantel's claim of qualified immunity.

The evidence establishes that after the initial arrest, Chief Marcantel contacted Acadian Ambulance to meet plaintiff at the sheriff's station. Upon arriving, the medical personnel filled out a record indicating that Michell Deville refused medical

assistance, that she was on no medications and was not under the care of any physicians. *Acadian Ambulance Rep. #1.* Chief Marcantel testified that he heard plaintiff tell Acadian Ambulance personnel that she was not on medications. *Marcantel, p. 102.* At that time he requested that plaintiff be subjected to blood and urine testing while in police custody. The results of the urine toxicology test from the Louisiana State Crime laboratory were returned on April 19, 2006 and showed the presence of Phentermine and Sertraline, an anti-anxiety drug and a prescription appetite suppressant. Chief Marcantel swore out an Affidavit on May 18, 2006 which was presented to Justice of the Peace, A.C. "Robin" Tatman, Jr., who signed a valid Warrant of Arrest for the charges of violation of La. R.S. 14:98(C), operating a vehicle while under the influence of any controlled dangerous substance listed in Schedule I, II, III, IV, or V; and La. R.S. 14:91.13, illegal use of controlled dangerous substances in the presence of persons under seventeen years of age.

To overcome the Chief Marcantel's claim of qualified immunity, plaintiffs must "demonstrate an issue of material fact as to whether any reasonably competent officer possessing the information that each officer had at the time he swore his affidavit could have concluded that a warrant should issue." *Freeman*, 210 F.3d at 553. If officers of reasonable competence could disagree on this issue, defendants are entitled to qualified immunity. *Id.* at 554.

Plaintiffs have failed to offer any evidence which would indicate that Chief

22

Marcantel relied upon information other than that contained within the police department's investigation file. The information in the file, standing alone, would support the conclusion that probable cause existed to believe that plaintiff had committed the offense of using controlled substances. The only conclusion one can reach from this fact is that Chief Marcantel's decision was based solely on the Acadian Ambulance record and the urine toxicology results, a decision which, as a matter of law, is not in reckless disregard of the truth. Chief Marcantel's affidavit in support of his application for plaintiff's arrest warrant included nothing more than the information which was available in the department file and plaintiffs have offered no evidence which would indicate the information was false.

The test for qualified immunity is objective reasonableness. The subjective belief of the defendant is for the most part irrelevant. *See Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990)(holding that even an officer who subjectively intends to act unreasonably is entitled to immunity if his actions are objectively reasonable). The Court finds that Chief Marcantel's actions involving the June 19, 2006 arrest of Michell Deville were objectively reasonable and will dismiss plaintiffs' false arrest claim.

*b. Excessive Force*

Plaintiffs claim Chief Marcantel used excessive force when he broke plaintiff's driver side window, extricated her from her vehicle and "threw her" against her

vehicle in order to effect her arrest. To prevail on an excessive force claim, a plaintiff must establish: "(1) injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007) (internal citations omitted). To state a claim for excessive use of force, the plaintiff's asserted injury must be more than *de minimis*. *Id.* Plaintiffs assert that Michell Deville suffered an injury to her head when broken glass lacerated her scalp, injury to her right wrist and hand when she was handcuffed and injury to her abdomen when she was placed against her vehicle to be handcuffed.

The undisputed record reveals that plaintiff refused medical treatment upon arriving at the sheriff's station. After she was jailed and her husband arrived, she requested medical treatment and Acadian Ambulance returned. The initial report states that Michell Deville had a "lac[eration] to top it(sic) scalp, no bleeding noted, only a little dry blood, no crepitus noted." Upon the return of Acadian Ambulance the report stated "½ in[ch] lac[eration] to lt side of forehead in hairline minor hemorrhage controlled prior to ems arrival no crepitus denies HA [headache] denies dizziness." As cited in the excessive force claim against Officer Tarver, Acadian Ambulance's Medical Record indicates no trauma to plaintiff's abdomen. Assuming *arguendo* that plaintiff suffered more than a *de minimis* injury, the Court will determine whether Chief Marcantel's actions were excessive and objectively

24

unreasonable.

When Chief Marcantel arrived at the scene on August 5, 2005 he encountered a volatile situation in which plaintiff, who was obviously very upset and emotional, was locked in her vehicle with a small child, was actively refusing to cooperate with Officer Tarver, was resisting arrest and had called her husband and son to come to the scene. Chief Marcantel stated in his deposition that he approached plaintiff's vehicle, showed her his badge and identification and told her she was under arrest and to get out of the vehicle. *Marcantel Depo., pp. 47-58.* He further stated that when he approached the vehicle plaintiff was cursing and the child was screaming and crying. *Id.* At that point, Chief Marcantel used Officer Tarver's flashlight to break plaintiff's driver side window and reached into the vehicle to secure plaintiff's hands. *Id.* Officer Tarver then opened the driver door and the two men removed plaintiff from the vehicle as she struggled against them. *Id., pp. 48-51.* In order to assist Officer Tarver place the handcuffs on plaintiff, Chief Marcantel stated that he held her against the vehicle where she continued to struggle against him. *Id.*

The reasonableness of official use of force turns on "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." The relevant factors "include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest

or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Applying these standards to the undisputed circumstances, the Court finds that Chief Marcantel's actions in breaking the window in order to arrest Michell Deville as she was actively resisting arrest, removing her from the vehicle and placing her against the vehicle to restrain and handcuff her, were reasonable use of official force under the existing circumstances. *Martinez-Aguero* at 459 F.3d 626 (factors to consider in excessive force claim are "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."). Accordingly, plaintiff's excessive force claims against Chief Marcantel will be dismissed.

*iii.   Malicious Prosecution Claims*

Based on the Court's holding that Chief Marcantel had probable cause to arrest plaintiff on August 5, 2005 and on June 19, 2006 and was not objectively unreasonable in his actions related to either arrest, plaintiffs' claim for malicious prosecution must also be dismissed. While plaintiff alleges without any evidentiary support that Chief Marcantel "was trying to do whatever he could to re-arrest [plaintiff] (possibly in retaliation for her complaint and retention of an attorney), the Fifth Circuit has held, "an officer who acted with malice in procuring the warrant or the indictment will not be liable if the facts supporting the warrant or indictment are put before an impartial intermediary such as a magistrate or a grand jury, for that

26

intermediary's independent decision breaks the causal chain and insulates the initiating party." *Taylor v. Gregg*, 36 F.3d 453, 457 (5th Cir. 1994). Plaintiffs' malicious prosecution claims against Chief Marcantel will be dismissed.

### B. Plaintiffs' Claims Under the First and Ninth Amendments

Plaintiffs do not specifically address their First Amendment claims against defendants. *R. 1.* In their opposition to the motions for summary judgment, plaintiffs state that defendants' actions "terrorized [plaintiff], causing her to lock her doors, fear law enforcement, and fear driving"[5], and allege that Chief Marcantel retaliated against her for bringing the instant suit when he arrested her on August 5, 2006. *Id. 54.*

The First Amendment prohibits not only direct limits on individual speech but also adverse governmental action against an individual in retaliation for the exercise of protected speech activities. *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). To establish a First Amendment retaliation claim, plaintiffs must establish that (1) Michell Deville was engaged in constitutionally protected activity, (2) the defendants' actions caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiff's exercise of constitutionally protected conduct. *Id.*

---

[5] The deposition testimony of plaintiff's husband, Ricky Deville, states that he "guesses" plaintiff is afraid of law enforcement personnel, but points to no substantiated incidents as a result of the alleged fear. *Depo. Of R. Deville, pp. 47-50.*

Even construing the allegations in a light most favorable to plaintiffs, they have failed to establish a violation of the First Amendment. Plaintiffs have produced absolutely no evidence that the arrests were motivated by retaliation or that Michell Deville suffered an injury that would chill a person of ordinary firmness from continuing to trust law enforcement or drive without fear. "[S]ome retaliatory actions-even if they actually have the effect of chilling the plaintiff's speech-are too trivial or minor to be actionable as a violation of the First Amendment." *Keenan*, 290 F.3d at 258. Accordingly, plaintiffs' First Amendment claims will be dismissed.

Nor can plaintiffs establish Ninth Amendment claims against defendants. The Ninth Amendment to the United States Constitution states: "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." Hence, the Ninth Amendment does not provide an action for a civil rights violation. In *Richardson v. Sewerage & Water Bd.*, 1996 WL 288275, *2(E.D.La.,1996), Judge Scar considered a Ninth Amendment claim in a case involving alleged § 1983 violations. The court held, "The Ninth Amendment is not a vehicle for bringing civil rights claims. Simply put, [plaintiff's] allegations of Ninth Amendment violations fail to state a claim for which relief can be granted pursuant to 42 U.S.C. § 1983. *See Charles v. Brown*, 495 F.Supp. 862, 863 (N.D.Ala.1980); *see also Canton Branch, N.A.A.C.P. v. Runnels*, 617 F.Supp. 607, 609 n. 3 (S.D.Miss.1985)." As plaintiffs have presented nothing in their Complaint

28

or their objections, by way of factual or legal argument, which warrants a contrary conclusion, their Ninth Amendment claims against Chief Marcantel will be dismissed.

### D.  Plaintiffs' Claims Under 42 U.S.C. §§ 1985 and 1986

Plaintiffs have raised no allegations or provided no evidence of claims under §§ 1985 and 1986. Under § 1985, conspiracy to interfere with civil rights, the plaintiffs "must prove a discriminatory animus based on race or some other inherited or immutable class characteristic such as gender, religion or national origin or based upon political association or beliefs." *Galloway v. State of Louisiana*, 817 F.2d 1154, 1159 (5th Cir.1987). The Court has found that plaintiffs' conspiracy claim must fail and in their memoranda in opposition to defendants' motions, plaintiffs concede that this matter is not based on a "discriminatory animus." Accordingly, plaintiffs' § 1985 claim and related § 1986 claim will be dismissed.

### E.  Village of Turkey Creek

Plaintiffs' allegations against the Village of Turkey Creek include violations under 42 U.S. C. § 1983, 1985 and 1986. For the foregoing reasons, plaintiffs have failed to establish these actions and they will therefore be dismissed against the Village of Turkey Creek.

"Section 1983 offers no *respondeat superior* liability. Municipalities face § 1983 liability 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official

policy, inflicts the injury....' *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978).

Proof of municipal liability sufficient to satisfy *Monell* requires: (1) an official policy

(or custom), of which (2) a policy maker can be charged with actual or constructive

knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or

custom). *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir.2001)." *Pineda*

*v. City of Houston,* 291 F.3d 325, 328 (5th Cir. 2002).

In their opposition, plaintiffs contend that "Turkey Creek apparently required

no training of its officers and took no action to curb their behavior...." *R. 54.*

Plaintiffs allege in their complaint, (1) improper training; (2) improper supervision;

(3) "inadequately and improperly investigate citizen complaints of police misconduct;

and (4) "[c]ondoning and allowing unlawful and unconstitutional police behavior

misconduct."

Under certain circumstances, a municipality may incur § 1983 liability for its

employees' acts when a municipal policy of hiring or training causes those acts.[6]  In

order to prove that a municipal hiring or training policy violated her rights under §

1983, plaintiff must show that (1) the training or hiring procedures of the

municipality's policymaker were inadequate; (2) the municipality's policymaker was

deliberately indifferent in adopting the hiring or training policy; and (3) the

---

[6] The Court will assume *arguendo* that the Village of Turkey Creek had the authority to require the officers to attend "adequate" training despite its designation as a "Lawrason Act" municipality. *See, supra.*

inadequate hiring or training policy directly caused the plaintiff's injury. *Benavides v. County of Wilson*, 955 F.2d 968, 972 (5th Cir. 1992).

A municipality acts with "deliberate indifference" in adopting an otherwise constitutional policy if "in light of the duties assigned to specific officers or employees, the need for more or different training is so obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.*, (quoting *Wassum v. City of Bellaire, Texas*, 861 F.2d 453, 456 (5th Cir.1988) (plaintiff must show that hiring practice constituted "gross negligence amounting to conscious indifference to the welfare of the public")).

Plaintiffs point to no evidence of inadequate hiring and training nor of inadequate supervision of Officer Tarver or Chief Marcantel.  Mere proof that the injury could have been prevented if the officer had received better or additional training cannot, without more, support liability. *Roberts v. City of Shreveport*,  397 F.3d 287, 293 (Fifth Cir. 2005).  Plaintiffs have not presented a soupçon of such evidence. The undisputed record indicates that both officers were P.O.S.T. certified in 2005 in accordance with La. R.S. 40:2401, *et seq.* Further, plaintiffs have "nothing but their own allegations to establish that [the officers'] training was so obviously inadequate that [the Village of Turkey Creek] was deliberately indifferent in not improving it... [C]onclusory allegations of ... grossly inadequate training do not make

31

out a case of a deliberately indifferent policy." *Benavides v. County of Wilson*, 955 F.2d 968, 973 -974 (5th Cir 1992). Finally, plaintiffs have no evidence to show that the alleged constitutional violations would not have occurred had the allegedly inadequate training policy and supervision been some how different. For liability to attach, a plaintiff must allege with specificity how a particular training program [or supervision] is defective. *Roberts* at 293.

As to the claims for improper investigation of citizen complaints and condoning unconstitutional police behavior, plaintiffs have provided no instances where citizens complained of similar conduct or where "unconstitutional police behavior" occurred in the absence of such complaints.[7] Moreover, plaintiffs have no evidence to show that the Village of Turkey Creek had a policy or custom of violating any civil rights, much less any facts to show that any such policy or custom was the "moving force" behind the alleged constitutional violations. Plaintiffs' § 1983 claims against the Village of Turkey Creek will be dismissed.

### F. *Village of Turkey Creek's Motion for Judgment on the Pleadings as to Plaintiffs' State Law Claims*

Although 28 U.S.C. § 1367 confers supplemental jurisdiction over plaintiffs' state law claims, the assertion of supplemental jurisdiction may be declined if all claims over which the Court has original jurisdiction are dismissed. 28 U.S.C. §

---

[7] In her deposition testimony, Michell Deville stated that she "had heard" of an incident where Officer Tarver asked a male driver to get out of his car. *Plaintiff's Depo, pp. 12-13.*

1367(3). "When a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims. However, the dismissal of the pendent claims should expressly be without prejudice so that the plaintiff may re-file his claims in the appropriate state court." *Bass v. Parkwood Hosp.*, 180 F.3d 234, 246 (5th Cir. 1999). "The Supreme Court in *United Mine Workers of America v. Gibbs*, emphasized that '[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of the applicable law.'" *Noble v. White*, 996 F.2d 797,799 (5th Cir. 1993)(citation omitted). Because plaintiffs' federal claims will be dismissed by this ruling, the Court will not have original jurisdiction over their remaining state law claims.

Accordingly, the Court will dismiss plaintiffs' state law claims without prejudice and will deny the motion for judgment on the pleadings which applies only to plaintiffs' state law claims.

## IV.  Conclusion

For the foregoing reasons, the Court will grant defendants' motions for summary judgment in part and dismiss plaintiffs' federal law claims with prejudice. Additionally, as the Court will not exercise its supplemental jurisdiction over plaintiffs' state law claims, the Court will deny defendants' motions for summary judgment in part and dismiss the state claims without prejudice. Thus, the Village of Turkey Creek's motion for judgment on the pleadings as to plaintiffs' state law claims

33

will be denied.